**[Cite as *State v. Farmer*, 2024-Ohio-2930.]**

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |     | JUDGES:                        |
| ------------------------ | --- | ------------------------------ |
| STATE OF OHIO            | :   | Hon. Patricia A. Delaney, P.J. |
|                          | :   | Hon. W. Scott Gwin, J.         |
| Plaintiff-Appellee       | :   | Hon. John W. Wise, J.          |
|                          | :   |                                |
| -vs-                     | :   |                                |
|                          | :   | Case No. 24CA000001            |
| BRIAN FARMER             | :   |                                |
|                          | :   |                                |
| Defendant-Appellant      | :   | <u>OPINION</u>                 |


CHARACTER OF PROCEEDING:    Appeal from the Mount Vernon Municipal
Court, Case No. 23TRD04101


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    August 1, 2024


APPEARANCES:


For Plaintiff-Appellee

STEVEN THOMAS D. POTTS
Assistant Director of Law
Office of the City of Mount Vernon
5 North Gay Street
Mount Vernon, OH 43050

For Defendant-Appellant

BRIAN FARMER PRO SE
3859 Martinsburg Road
Gambier, OH 43022

*Gwin, J.,*

**{¶1}** Defendant-appellant Brian J. Farmer ["Farmer"] was convicted of not wearing a seatbelt in violation of R.C. 4513.263(B)(1) after a court trial during which he represented himself. In his pro se appeal, Farmer argues the statute is unconstitutional as applied to his situation and his conviction is against the manifest weight of the evidence.

**{¶2}** Because we find that Farmer is in reality alleging that his conviction is based upon illegally obtained evidence, he waived all but plain error by failing to file a motion to suppress. We further find that his conviction is not against the manifest weight of the evidence.

*Facts and Procedural History*

**{¶3}** On November 14, 2023, Farmer was cited for failure to wear his seat belt in violation of R.C. 4513.263(B)(1) by Ohio State Highway Patrol Trooper Evan Reidenbach. On November 15, 2023 an original copy of the citation was filed with the Clerk of Courts for the Mount Vernon Municipal Court.

**{¶4}** On November 28, 2023, Farmer entered a plea of not guilty and the case was set for trial to the court on December 13, 2023. Farmer waived counsel and represented himself at trial. The sole witness to testify during trial was Trooper Reidenbach. He testified as follows.

**{¶5}** On November 14, 2024, Trooper Reidenbach, commissioned as an Ohio State Highway Patrol Trooper, wearing the proscribed uniform of the day, operating a marked cruiser equipped with red and/or blue oscillating emergency lights was conducting a routine patrol on State Route 13, in the Township of Millbury, in Knox County, in the

State of Ohio. T. at 5-6. It was a sunny day and the trooper was checking speeds as he was travelling northbound on State Route 13. Id. at 6; 10. At approximately 12:28 pm, he observed a 2001 black Mazda SUV traveling southbound at a speed estimated to be at least seven miles per hour over the prescribed speed limit. T. at 6; 8; 10; 12; 13. At the same time Trooper Reidenbach observed,

{¶6} So, when it's sunny out what I look for is a strap across the chest and anything dangling up in the corner of the vehicle, and I look at what color the strap is and what color the defendant was wearing. At the time he was wearing a dark green hoodie, I believe, or jacket, dark green jacket, and there is nothing across his chest. And it was a grey seat belt strap.

{¶7} T. at 7. Trooper Reidenbach conducted a traffic stop. As he approached the passenger side of the stopped vehicle,

I advised the defendant he is being stopped for speed. I stated I wasn't real worried about his speed, I was more worried about him not wearing his seat belt; that he was just going to be given a warning for his speed and that he was just going to be issued a citation for seat belt.

{¶8} T. at 8. On cross-examination, Trooper Reidenbach admitted that he estimated Farmer's speed. Id. at 9. He further admitted that the vehicle Farmer was driving had tinted side windows in the rear. Id. at 11-12. Trooper Reidenbach testified on cross-examination that he would not have stopped Farmer if he had not been speeding. Id. at 12. He testified,

So, the - - if you [Farmer] were doing the same speed and you were wearing your seatbelt, as everybody else was driving that same day, I would not have pulled you over that morning as you were passing by me.

{¶9} Id. The trooper testified that he is aware he cannot make a traffic stop just for a seatbelt violation. Id.

{¶10} At the conclusion of the trial, Farmer was found guilty of not wearing his seatbelt in violation of R.C. 4513.263(B)(1) and was fined $30.00 and court costs in accordance with the statute.

## Assignments of Error

{¶11} Farmer raises two Assignments of Error,

{¶12} "I. THE TRIAL COURT ERRED BY CONVICTING THE APPELLANT WHEN THE LAW IS UNCONSTITUTIONAL AS APPLIED.

{¶13} "II. THE COURT ERRED BY CONVICTING THE APPELLANT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### *Pro se appellants*

{¶14} We understand that Farmer has filed this appeal pro se. Nevertheless, "like members of the bar, pro se litigants are required to comply with rules of practice and procedure." *Hardy v. Belmont Correctional Inst*., 2006–Ohio–3316, ¶ 9 (10th Dist.). *See, also, State v. Hall*, 2008–Ohio–2128, ¶ 11 (11th Dist.). We also understand that "an appellate court will ordinarily indulge a pro se litigant where there is some semblance of compliance with the appellate rules." *State v. Richard*, 2005–Ohio–6494, ¶ 4 (8th Dist.) (internal quotation omitted). Although in a pro se action the court allows latitude to the unrepresented defendant in the presentation of his case, the court is not required to totally

throw the Rules out the window. *See, Wellington v. Mahoning Cty. Bd. of Elections,* 2008-Ohio-554, ¶18. (A substantial disregard for the rules cannot be tolerated).

**{¶15}** One area where this Court does not have discretion to overlook, is where facts, argument or evidence has been presented in the appellate brief that were not presented to the trial court during the proceedings in the lower court. In *State v. Hooks*, 92 Ohio St.3d 83(2001), the Supreme Court noted, "a reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. *See, State v. Ishmail*, 54 Ohio St.2d 402(1978)." It is also a longstanding rule "that the record cannot be enlarged by factual assertions in the brief." *Dissolution of Doty v. Doty*, 1980 WL 350992 (4th Dist. Feb. 28, 1980), citing *Scioto Bank v. Columbus Union Stock Yards*, 120 Ohio App. 55, 59 (10th Dist. 1963). New material and factual assertions contained in any brief in this court may not be considered. *See, North v. Beightler*, 2006-Ohio-6515, ¶ 7, *quoting Dzina v. Celebrezze*, 2006-Ohio-1195, ¶ 16. Therefore, we have disregarded facts and documents in the parties brief that are outside of the record. *State v. Stevens*, 2023-Ohio-2736, ¶¶ 16-18 (5th Dist.).

**{¶16}** In the interests of justice, we shall attempt to consider Farmer's assignments of error.

I.

**{¶17}** Although Farmer mentions the constitutionality of R.C. 4513.263, he further argues that the trooper unlawfully conducted a visual search of the interior of his vehicle, he further complains about improperly admitted evidence of radar readings, and that the trooper testified falsely during his trial. After reviewing Farmer's brief including his

contentions, we have interpreted Farmer's First Assignment of Error in the following manner: "Farmer's conviction is based upon an illegal stop and illegal search of his vehicle."

{¶18} Farmer first contends that R.C. 4513.263 prohibits the warrantless search of the interior of a vehicle for the sole purpose of seeing if someone is not wearing a seatbelt. In pertinent part the statute provides,

> (D) Notwithstanding any provision of law to the contrary, no law enforcement officer shall cause an operator of an automobile being operated on any street or highway to stop the automobile for the sole purpose of determining whether a violation of division (B) of this section has been or is being committed or for the sole purpose of issuing a ticket, citation, or summons for a violation of that nature or causing the arrest of or commencing a prosecution of a person for a violation of that nature, and no law enforcement officer shall view the interior or visually inspect any automobile being operated on any street or highway for the sole purpose of determining whether a violation of that nature has been or is being committed.

*Waiver*

{¶19} We begin by noting that Farmer did not file a motion to suppress on the basis that the Trooper did not have probable cause or a reasonable articulate suspicion independent of the seatbelt violation to initiate a traffic stop.

{¶20} Generally, the proper remedy for a Fourth Amendment violation is suppression of the evidence wrongfully obtained, not dismissal of the charges. An illegal

arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction. *United States v. Crews*, 445 U.S. 463, 474 (1980). A motion to suppress is the proper vehicle for raising challenges to exclude evidence which is the product of police conduct that results in a constitutional violation. *State v. French*, 72 Ohio St.3d 446 (1995).

{¶21} A motion to suppress must be filed within 35 days of arraignment or seven days before trial, whichever is earlier. Crim.R. 12(B) and (C); *State v. Stamper*, 102 Ohio App.3d 431, 440 (11th Dist. 1995). A failure to timely file a motion to suppress evidence amounts to a waiver of any such issues for purposes of trial. Crim.R. 12(D) and (H); *State v. Wade*, 53 Ohio St.2d 182 (1978), paragraph three of the syllabus, *vacated and remanded on other grounds, 438 U.S. 911(1978)*; *State v. Montgomery*, 2008-Ohio-6077, ¶ 43 (5th Dist.). Accordingly, we hold that Farmer's failure to file a motion to suppress pursuant to Crim.R. 12(C)(3) constitutes waiver of any objection to the grounds for the traffic stop.

{¶22} However, in spite of a defendant's failure to file a motion to suppress, or to object at trial, we may still review these issues under plain error. *See, State v. Sims*, 2016-Ohio-4763, ¶ 9 (10th Dist.), *citing State v. Osie*, 2014-Ohio-2966, ¶ 136, *citing* State *v. Campbell*, 69 Ohio St.3d 38, 44 (1994) (failing to file motion to suppress illegally obtained evidence waives objections to evidence other than plain error); *State v. Rogers,* 2015-Ohio-2549, ¶21; *State v. Johnson,* 2016-Ohio-8261, ¶29-30.

*Plain Error*

{¶23} "To establish plain error, [Farmer] must show that an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in

prejudice,' meaning that the error affected the outcome of the trial." (Emphasis omitted.) *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, *quoting State v. Rogers*, 2015-Ohio-2459, ¶ 22. *Accord State v. Bailey*, 2022-Ohio-4407, ¶ 8. These elements are "conjunctive," meaning "all three must apply to justify an appellate court's intervention." *Bailey* at ¶ 9, *citing State v. Barnes,* 94 Ohio St.3d 21, 27(2002). Intervention by an appellate court for plain error "is warranted only under exceptional circumstances to prevent injustice." Id. at ¶ 8, *citing State v. Long*, 53 Ohio St.2d 91(1978), paragraph three of the syllabus.

**{¶24}** The main distinction between plain-error review, which is the standard employed when a defendant failed to object at trial, and harmless-error review, which is employed when a defendant did object, is the party that bears the burden. *See State v. Jones*, 2020-Ohio-3051, ¶ 17-18. Under plain-error review, the defendant bears the burden to demonstrate the requirements for review whereas under harmless-error review, the state bears the burden to demonstrate that the error did not affect the defendant's substantial rights. Id. at ¶ 17-18. *See, State v. Bond*, 2022-Ohio-4150, ¶7.

**{¶25}** In order to show that an error affected substantial rights, the defendant must demonstrate "a reasonable probability that the error resulted in prejudice - the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis deleted.) *State v. Rogers*, 2015-Ohio-2459, ¶ 22, *citing United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, (2004) (construing Fed.R.Crim.P. 52(b), the federal analog to Crim.R. 52(B)). *Bond* at ¶ 22. The Court in *Rogers* reaffirmed that even if an accused shows the trial court committed plain error affecting the outcome of the proceeding, the appellate court is not required to correct it. Id. at ¶ 23. The Supreme Court stated:

[W]e have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes* at 27, 94 Ohio St.3d 21, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶26}** *Rogers*, ¶ 23; *State v. Perry*, 101 Ohio St.3d 118, 120 (2004).

*The traffic stop*

**{¶27}** Trooper Reidenbach conducted a traffic stop. At approximately 12:28 pm, he observed a 2001 black Mazda SUV traveling southbound at a speed estimated to be at least seven miles per hour over the prescribed 60 mile per hour speed limit. T. at 6; 8; 10; 12; 13.

**{¶28}** There are actually two types of "traffic" stops, and each has a different constitutional standard applicable to it. The cause for a *non-investigatory traffic stop* has been succinctly stated by the Supreme Court of Ohio: "Where a police officer stops a vehicle based upon probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution[.]" *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-21(1996). Probable cause is defined in terms of "facts or circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975), *quoting Beck v. Ohio*, 379 U.S. 89, 91(1964).

**{¶29}** The cause for an *investigatory stop* was stated by the Supreme Court in *State v. Mays*, 2008-Ohio-4538. If an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable

suspicion considering all the circumstances, then the stop is constitutionally valid. *Mays*, ¶8. See, *State v. Marcum*, 2019-Ohio-2293(5th Dist.).

{¶30} The confusion in this area remains. In a case involving a crossing of the fog line, the single solid white line on the right-hand edge of a roadway, the Supreme Court of Ohio recently ruled that the statute prohibits crossing, but not touching, of a fog line. *State v. Turner*, 2020-Ohio-6773, ¶ 3. Turner argued the traffic stop was invalid because the tires touched, but did not cross the fog line. The Supreme Court found the pertinent question here, however, is not whether Turner was guilty of the marked lanes violation but, rather, whether the officer believes a traffic law has been violated. In that analysis, the focus of the inquiry is whether the officer had "probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see also Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus." *State v. Turner*, 2020-Ohio-6773, ¶ 2.

{¶31} Trooper Reidenbach's unrefuted testimony is that he observed Farmer to be traveling seven miles per hour over the 60 mile per hour speed limit. Thus, the traffic stop in this case is a "typical non [-] investigatory stop that officers perform after witnessing specific traffic violations, premised on probable cause." *State v. Hampton*, 2022-Ohio-1380, ¶ 8 (1st Dist.); *State Oliver,* 2023-Ohio-1550, ¶51(10th Dist.). At the very least, Trooper Reidenbach had reasonable and articulable suspicion considering all the circumstances, that Farmer had exceeded the speed limit; therefore, the stop is constitutionally valid.

{¶32} Because the unrefuted testimony is that Farmer's speeding is what prompted the traffic stop, Trooper Reidenbach did not stop the automobile for the sole

purpose of determining whether Farmer was wearing a seatbelt. Trooper Reidenbach, therefore, did not violate the statute's prohibition against viewing the interior or visually inspecting the interior of Farmer's automobile for the sole purpose of determining whether a violation of that nature has been or is being committed. Obviously, it was necessary to view the interior of Farmer's vehicle while initiating and conducting the stop of Farmer's vehicle.

{¶33} We find that Farmer has not demonstrated that there is "a reasonable probability that there was an obvious error that resulted in prejudice," meaning that the error affected the outcome of the trial. We decline to find a manifest injustice warranting the extraordinary step of finding plain error in the stop of Farmer's vehicle by Trooper Reidenbach, or in the application of R.C. 4513.263 under the facts of this case.

*The calibration of the radar device.*

{¶34} Trooper Reidenbach was operating a BEE III radar device. T. at 18. Farmer alleges that the Trooper testified falsely concerning his calibrating the radar device and, therefore, testimony concerning the speed as measured by the radar device was inadmissible. [Appellant's brief at 3-4].

{¶35} The trooper admitted that he did not recall the exact speed because he did not "lock" Farmer's speed. T. at 13. Further, the trooper testified that, "I've been told if you're not going to write them the speed [sic.], do not tell then their speed because then they think they can go that speed." Id. He further testified, "whenever, I stop somebody for a seat belt violation you have to be at least going seven miles an hour over the speed limit. I will not stop anything under that." Concerning calibration, Trooper Reidenbach testified that the technicians do the calibration check, while the trooper does a "confidence

check." T. at 13. Trooper Reidenbach testified that the radar device was operating properly on the day in question. T. at 19.

{¶36} Again, Farmer failed to file a motion to suppress claiming either the trooper was not qualified or the device was not properly calibrated. Farmer did not object at trial to Trooper Reidenbach's qualifications to accurately visually estimate the speed of a moving vehicle. The trial judge found Trooper Reidenbach to be a credible witness. T. at 30.

{¶37} Farmer cannot establish plain error with respect to the Trooper's testimony. Doubts about whether Trooper Reidenbach's radar unit accurately measured Farmer's speed are erased by Trooper Reidenbach's testimony that his visual estimation of Farmer's speed was consistent with his radar's measurement. T. at 12-13; 18-19. Here, we note that although "'[a] driver cannot be convicted of speeding based solely upon a peace officer's unaided visual estimation of the speed of a motor vehicle, * * * testimony related to an officer's visual estimation can be offered in support of a speeding charge.'" *State v. White*, 2021-Ohio-4046, ¶ 6 (9th Dist.), *quoting State v. Upchurch*, 2021-Ohio-94, ¶ 12 (9th Dist.). Accordingly, if Trooper Reidenbach was properly qualified to visually estimate the speed of a moving vehicle and he was deemed to be credible, Trooper Reidenbach's testimony could appropriately be used to bolster the results of the confidence-check procedure, thereby contributing to a finding that his radar unit was reliable and that it accurately measured Farmer's speed. *State v. Shamansky*, 2023-Ohio-405, ¶ 11 (3rd Dist.), *appeal not allowed*, 2023-Ohio-1979.

{¶38} We find nothing in Trooper Reidenbach's testimony or in the background of this case that persuades us that the trial judge erred by crediting Trooper Reidenbach's

testimony. Consequently, giving credence to Trooper Reidenbach's visual estimation of Farmer's speed, Trooper Reidenbach's testimony lends support to a finding that his speed measuring device was reliable and accurate at the time in question.

{¶39} We find that Farmer has not demonstrated that there is "a reasonable probability that an obvious error resulted in prejudice," meaning that the error affected the outcome of the trial. We decline to find a manifest injustice warranting the extraordinary step of finding plain error in the admission of Trooper Reidenbach's testimony concerning the calibration or his qualifications to use the radar device or to visually estimate the speed of a moving vehicle.

{¶40} Farmer's First Assignment of Error is overruled.

II.

{¶41} In his Second Assignment of Error, Farmer argues his conviction is against the manifest weight of the evidence.

**Standard of Review – Manifest Weight**

{¶42} The term "'manifest weight of the evidence'. . . relates to persuasion." *Eastley v. Volkman*, 2012-Ohio-2179, ¶19. It "concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387(1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 102 at n.4 (1997)*; *State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶43} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the

evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d at 386–387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001).

**{¶44}** Weight of the evidence addresses the evidence's effect of inducing belief. *Thompkins*, at 386-387; *State v. Williams,* 2003-Ohio-4396, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *State v. Jordan*, 2023-Ohio-3800; *Thompkins* at 387, *citing Tibbs v. Florida*, 457 U.S. 31, 42(1982) (quotation marks omitted); *State v. Wilson,* 2007-Ohio-2202, ¶25, citing *Thompkins.*

**{¶45}** In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley,* 2012-Ohio-2179 at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).

**{¶46}** When there is conflicting testimony presented at trial, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented. "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Seasons Coal Co., Inc* at fn. 3, *quoting* 5 Ohio Jur.3d, Appellate Review, §603, at 191-192 (1978); *In re Z.C.,* 2023-Ohio-4703, ¶14.

**{¶47}** The interplay between the presumption of correctness and the ability of an appellate court to reverse a verdict based on the manifest weight of the evidence has been stated as follows, "'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Seasons Coal Co.,* 10 Ohio St.3d at 80, *quoting C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 280 - 281. See, also, *Frankenmuth Mut. Ins. Co. v. Selz*, 6 Ohio St.3d 169, 172 (1983); *In re Sekulich,* 65 Ohio St.2d 13, 16 (1981). "The central question is whether 'there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.' (Emphasis sic.) *State v. Getsy*, 84 Ohio St.3d 180, 193-194, 702 N.E.2d 866 (1998), *citing State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus, *superseded by constitutional amendment on other grounds as stated in Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668(1997)." State v. Nicholson,* 2024-Ohio-604, ¶71. A manifest-weight challenge should be sustained "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, (1st Dist. 1983); *Nicholson* at ¶71.

**Issue for Appellate Review**:  *Whether the judge clearly lost his way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered*

**{¶48}** The only witness to testify at trial was Trooper Reidenbach. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182 (1990). The trier of fact "has the best

opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). As long as there is substantial evidence going to all the essential elements of the case the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *State v. Getsy*, 84 Ohio St.3d 180, 193-194(1998); *State v. Nicholson,* 2024-Ohio-604, ¶71.

{¶49} Farmer attacks the trooper's ability to view whether the seat belt was being worn due to the speed of the vehicles, the layout of the vehicle Farmer was driving, and the tinted windows. He reiterates his arguments concerning the trooper's lack of probable cause to conduct a traffic stop pointing to the fact the trooper did not issue a speeding citation to Farmer.

{¶50} "In reviewing a bench trial, 'an appellate court presumes that a trial court considered nothing but relevant and competent evidence in reaching its verdict,' and this presumption 'may be overcome only by an affirmative showing to the contrary by the appellant.'" *State v. Pearson*, 2015-Ohio-3974, ¶ 13 (10th Dist.), *quoting State v. Wiles*, 59 Ohio St.3d 71, 86 (1991); *State v. Cole,* 2023-Ohio-725, ¶18 (1st Dist.). Farmer has made no such showing in this case.

{¶51} Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we cannot reach the conclusion that the judge lost his way and created a manifest miscarriage of justice. We do not find the judge erred when he found Farmer guilty. Taken as a whole, the testimony and record contain ample evidence of Farmer's responsibility for the alleged offense. The fact that the judge chose to believe the testimony of the state's

witness does not, in and of itself, render his conviction against the manifest weight of the evidence. While Farmer is certainly free to argue that the trooper was either mistaken or lying, on a full review of the record we cannot say that the judge clearly lost his way or created a manifest injustice by choosing to believe the testimony of Trooper Reidenbach. The judge was able to observe the eyewitness testimony subject to cross-examination by Farmer, as well as hear Farmer's explanation and arguments.

**{¶52}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the offense for which Farmer was convicted. We do not find that the judge disregarded or overlooked compelling evidence that weighed against conviction.

**{¶53}** Farmer's Second Assignment of Error is overruled.

**{¶54}** The judgment of the Mount Vernon Municipal Court, Knox County, Ohio is affirmed.

By Gwin, J.,

Delaney, P.J., and

Wise, J., concur